UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
|     Plaintiff | : | CRIM 3:00-cr-00263(JCH) |
| | : | |
| v. | : | |
| | : | |
| PATRICE ST. SURIN | : | September 9, 2008 |
|     Defendant | : | |

### MEMORANDUM IN SUPPORT OF REDUCTION IN SENTENCE

The defendant, Patrice St. Surin, hereby requests an extension of time within which to respond to the Court's Order To Show Cause. [Doc.1889] why his sentence should be reduced pursuant to the recent amendments to the guidelines applicable to crack cocaine offenses. Mr. St. Surin respectfully requests that the Court enter an amended judgment pursuant to 18 U.S.C. section 3582(c)(2) reducing his sentence from 188 months to 121 of incarceration.

The defendant, Patrice St Surin, was convicted after a jury trial of conspiracy to possess with intent to distribute fifty grams or more of cocaine base and five kilograms or more of cocaine, in violation of 21 U.S.C.§846. On May 5, 2003 the court imposed a sentence of 188 months of imprisonment, followed by five years supervised release, and a $5000.00 fine. The defendant appealed his conviction to the Second Circuit, and the judgment was summarily affirmed on October 15, 2004. The Mr. St Surin has since been resentenced pursuant to the Supreme Court's decision in United States v. Booker, 543

1

U.S. 220 (2005), and the Court of Appeals decision in <u>United State v. Crosby</u>, 397 F.3. 103 (2d Cir. 2005).

In four reports to Congress (USSC Cocaine and Federal Sentencing Policy, February 1995; USSC Cocaine and Federal Sentencing Policy, April 1997; USSC Cocaine and Federal Sentencing Policy, May 2002; USSC Cocaine and Federal Sentencing Policy, May 2007), the Sentencing Commission demonstrated that the severity of crack cocaine penalties based upon drug type is unjustified by the purposes of sentencing, is unfair, and has a disproportionate impact on African Americans. In response, The United States Sentencing Commission has made Amendment 706 retroactive. The amendment amends the drug quantity table set forth in U.S.S.G. § 2D1.1 to reduce the base offense involving 124 grams of cocaine base, in violation of 21 USC §841. On May 5, 2008, the Court sentenced Mr. St Surin to 188 months imprisonment, finding the defendant's relevant conduct included 124 grams of cocaine base, and ten kilograms of cocaine powder. Subsequent to this sentencing, on November 1, 2007 and then on May 1, 2008, the amendments to the Sentencing Guidelines reduces the offense level for 124 grams quantity of cocaine base to 30 , but after the conversion of the crack to marijuana, it appears the base offense level is 32. See U.S.S.G. §2D1.1. This amendment was adopted in response to studies which raise grave doubts about the fairness and rationale of 100 to 1 crack/powder ration incorporated into the sentencing guidelines. See generally United States Sentencing Commission, report to Congress: Cocaine and Federal Sentencing Policy (May 2007). In that report the Commission explained:

> The Commission, however, views the amendment only as a partial remedy to some of the problems associated with the 100 to 1 drug quantity

> ratio. It is neither a permanent not a complete solution to these problems. Any comprehensive solution requires appropriate legislative action by Congress. It is the Commissions firm desire that this report will facilitate prompt congressional action addressing the 100 to 1 drug quantity ratio.

Subsequent to the affective date of this amendment to §2D1.1, the sentencing Commission considered whether to make the amendment retroactive under the authority created by 18 U.S.C. § 3582(c)(2). It took action on December 11, 2007, by including this amendment in the list of retroactive amendments in §1B1.1 of the guidelines. See 73 Fed Reg. 217-01 (2008). Based on this retroactivity, the statutory authority underlying it, and the Supreme Courts intervening decisions in <u>United States v, Booker</u>, 543 U.S. 220 (2005); <u>Rita v United States</u>, 127 S. Ct 2456 (2007); <u>Gall v. United States</u> 128 S. Ct 586 (2007); <u>Kimbrough v. United States</u>, 128 S.Ct 558, 564 (2007). Mr. St Surin brings this motion to reduce his sentence.

**ARGUMENT**

**A.    MR. ST SURIN'S OFFENSE LEVEL SHOULD BE REDUCED FROM 34 TO 30 BASED UPON THE MAY 1, 2008 AMENDMENT TO §2D1.1.**

This court may modify a defendant's term of imprisonment once it has been imposed when the United States sentencing Commission makes an amendment to the guidelines retroactive and the guideline that was amended was part of the basis of the defendants guideline range. 18 U.S.C. §3582(c)(2) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> **(2)** in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994 (o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553 (a) to the extent that they

3

are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Since the guidelines are entirely advisory, the Court has the discretion to re-sentence the defendant to any term that complies with 18 U.S.C. 3553(a). The Court must, however, treat the Guidelines, their Commentary and the Commission Policy Statement as advisory. See Booker 543 U.S. at 245. When sentencing a defendant, this Court "may not presume the Guideline Range is reasonable." See Gall at 596 (2007). Rather, this Court must treat the Guidelines as just "one factor among several" that 18 U.S.C. § 3553(a) mandates it consider. Kimbrough at 564 (2007). Once this Court correctly calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors set forth §3553(a). Gall, 128 S.Ct at 597.

Section 1B1.1.10 is the guideline policy statement which implements 18 U.S.C. § 3582(c)(2). Subsection (c) of that policy statement lists amendments that are covered by the policy statement. And one of these amendments which is listed is amendment 711 to the guidelines. See United State Sentencing Commission News Release dated December 11, 2007. That is the amendment which reduced the base offense level for crack cocaine offenses. See U.S.S.G. , App. C, 711.

Application of this amendment to the crack cocaine guidelines in the present case results in a decrease of the base offense level fro 34 to 30, a decrease in the resulting guideline range from 151 to 188 months to 97 to 121 months. The Court should consider that at the time of the original sentence, the Court was required to treat the guidelines as mandatory, under the controlling law of the time. Since then, the Supreme Court has held the guidelines in their mandatory form are unconstitutional and-through severing 18

4

U.S.C. § 3553(b)-made them "effectively advisory." Booker and the subsequent Supreme Court cases clarifying it-namely, Rita v. United States, supra; Gall v. United States, supra; and Kimbrough v. United States, supra-have created a situation in which the guidelines are but one of several factors to be considered under § 3553(a). What the Supreme Court has described as the "overarching provision" in § 3553(a) is the requirements that courts "impose a sentence sufficient, but not greater that necessary to accomplish the goals of sentencing." Kimbrough, 128 S.CT at 570.

Booker and its progeny apply to the imposition of a new sentence under 18 U.S.C. § 3582(c)(2), moreover. The Ninth circuit considered this question in United States v. Hicks, 472 F.3d 1167 (9thCir.2007) and held, put most succinctly, that "Booker applies to § 3582(c)(2) proceeding." Hicks, 472 F.3d at 1169. As the court explained in more depth:

> Booker explicitly stated that, "as by now should be clear,[a] mandatory system is no longer an open choice." Although the Court acknowledged that Congress had intended to create a mandatory guideline system, Booker stresses that ghs was not an open choice." Although the Court acknowledged that Congress had intended to create a mandatory guideline system, Booker streeded that this was not an option:"[W]e repeat, given today's constitutional holding,[a mandatory Guideline regime] is not a choice that remains open . . . [W]e have concluded that today's holding is fundamentally inconsistent with the judge-based sentencing system that Congress enacted into law." The Court never qualified this statement, and never suggested, explicitly or implicitly, that the mandatory Guideline regime survived in any context.
> 
> In fact, the Court emphasized that the Guidelines could not be construed as mandatory in one context and advisory in another. When the government suggested, in *Booker,* that the Guidelines be considered advisory in certain, constitutionally-compelled cases, but mandatory in others, the Court quickly dismissed this notion, stating, "we do not see how it is possible to leave the Guidelines as binding in other cases. . . . [W]e believe that Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others, given the administrative complexities that such a system would create." *Id.* at 266, 125 S.Ct. 738. In short, *Booker* expressly rejected the idea that the Guidelines might be advisory in certain contexts but not in others, and Congress has done nothing to undermine this conclusion. Because a "mandatory system is

    no longer an open choice," *id.* at 263, 125 S.Ct. 738, district courts are necessarily endowed with the discretion to depart from the Guidelines when issuing new sentences under § 3582(c)(2).

Here are a number of non-guideline factors that justify a sentence at the below the new guideline range.

    It is factually uncontested that at the time of the defendants' arrest, he had a permanent resident alien status in the United States. On the day of Mr. St Surin's sentencing, his Attorney James Swaine provided the Court with argument regarding what sentence within the guideline range to impose and cited Mr. St Surin's deportation status. As a result of his conviction, the Court was made aware that Mr. St Surin will be subject to removal from the United States because of the conviction of an aggravated felony. He is clearly subject to removal due to this status he will therefore serve a sentence "under circumstances that are more severe than those facing a United States citizen under similar circumstances," <u>U.S. v. Restrepo</u> 999 F. 2d 640 at 642 (2d Cir 1993), cert denied, 510 U.S. 954, 114 S. Ct. 405, 126 L.Ed. 2d 352 (1993). A deportable alien is rendered ineligible"(a) to serve his sentence in a minimal security facility, and (b) to serve a part of the last 10% of his sentence in a community custody program such as a halfway house or home confinement." <u>Id at 643</u>. Also, it is highly likely that "the INS will file a detainer with the Bureau of Prisons some time prior to the end of his prison sentence." This will to incarceration "in an INS facility for an additional period while awaiting the completion of deportable proceedings." <u>Id</u>. Thus, all of the previous penalties for deportable aliens mentioned in <u>U.S. v. Restrepo</u> apply to Mr St Surin in this case

    But <u>U.S. v. Restrepo</u> also determined that certain conditions that were the result of the defendant's status as a deportable alien were not appropriate considerations for

6

downward departure. Id at 645-647. But Restrepo specifically "decline(d) to rule that pertinent collateral consequences of a defendant alienage could be serve as a valid basis for departure if those consequences were extraordinary in nature or degree. Id at 644.

It was later held in <u>U.S. v. Farouil</u>, 124 F 3d 838 (7th Cir. 1997) that "What all these opinions have in common is that they all preceded <u>Koon v. United States</u>, 116 S. Ct. 2035 (1996). As we have previously observed, Koon "generally informs us that the district courts enjoy broad discretion in deciding whether to depart when the particular facts of the case are outside the "heartland" of guidelines cases." <u>See United State v. Purchess</u>, 107 F. d. 1261, 1271 (7th Cir. 1997). In <u>United States v. Davoudi</u>, 172 F.3d 1130 (9th Cir. 1999), where the status of a deportable alien unnecessarily places them in a more restrictive status of confinement, and denies them access to BOP's drug treatment, early release, and community confinement programs that are otherwise available to general prison population. The defendant was convicted of making false statements to bank, the district court had discretion to depart downward because deportable alien may be unable to take advantage on minimum security designation of up to six months home confinement authorized by 18 U.S.C. § 3624(c), but it was also found that the courts failure to do so is not reviewable.

In <u>United States v. Bakeas</u>, 987 F.Supp. 44 (D. Mass 1997), a departure from 12 months to probationary sentence and home confinement for legal resident alien convicted of embezzlement because he was ineligible for minimum security confinement. In <u>United States v. Smith</u>, 27 F.3d 649 (D.C.Cir. 1994), the court found that because the defendants status as a deportable alien subjects him to harsher confinement because ineligible for

7

benefits of early release (to CTC) and not eligible for minimum security prison, so court has authority to consider downward departure.

Also, a deportable alien is not eligible for one-year reduction of sentence awarded those who complete the BOP's 500-hour drug program. See McClean v. Crabtree, 173 F3d 1176 (9th Cir. 1999).

An alien that is deported because of his guilty plea is punished too severely. In Jordan v. De George, 341 U.S. 223, 232 (1951)(Jackson, J.), the court found that deportation is "a life sentence of banishment in addition to the punishment which a citizen would suffer from the identical acts.". Therefore, a departure can be justified where the defendant's guilty plea results in deportation.

In United States v. Sentamu, 212 F.3d 127, 212 F.3d 127 (2d Cir. 05/12/2000), the Court clearly rejected the argument that deportation status can be grounds for departure, unless the defendant can show and present a colorable, non-frivolous defense to deportation, such that the act of consenting to deportation carries with it unusual assistance to the administration of justice. The defendant does not present such a defense in this particular case.

Congress has enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which took effect on April 24, 1996. Specifically, § 440(d) of the AEPA, "greatly expanded the range of crimes that rendered aliens statutorily ineligible for § 212(c) relief." *Henderson v. I.N.S.,* 157 F.3d 106, 109 (2d Cir.1998). In *I.N.S. v. St. Cyr,* 533 U.S. 289, 297, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court held that " § 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been

eligible for § 212(c) relief at the time of their plea under the law then in effect." *St. Cyr.*, 533 U.S. at 326, 121 S.Ct. 2271. Therefore, Mr. St. Surin is not eligible for 212(c) relief and as a result, the fact that he has not consented to removal and signed a waiver of rights with respect to deportation will not be the cause in the increase in the severity and length of his sentence. The only cause would then be his status as a deportable alien.

In <u>United States v. Smith</u>, 27 F.3d 649 (D.C. Cir. 1994),, "a downward departure may be appropriate where the defendants status as a deportable alien <u>is likely to cause a fortuitous increase in the severity of his sentence . . . </u>" and "we allowed [a] downward departure because of a defendant's status as a deportable alien, recognizing that because such aliens were ineligible for spending the last 10% of their sentences in community-based confinement and could not be assigned to minimum security prisons . . . a defendant's deportable alien status would `substantial[ly] . . . affect the severity of his confinement.'" *United States v. Graham,* 83 F.3d 1466, 1481 (D.C. Cir. 1996) (quoting *Smith,* 27 F.3d at 655).

While upholding the constitutionality of the deportation of prostitutes under the 1907 deportation Act, Justice Holmes wrote "It is thoroughly established that Congress has power to order the deportation of aliens whose presence in the country it deems hurtful. The determination by facts that might constitute a crime under local law is not a conviction of crime, nor is the deportation a punishment; it is simply a refusal by the Government to harbor persons whom it does not want." Although it is still not considered punishment, James Madison argued "If the banishment of an alien from a country into which he has been invited as the asylum most auspicious to his happiness,-a country where he may have formed the most tender connections; where he may have

9

invested his entire property, and acquired property of the real and permanent, as well as the movable and temporary kind; where he enjoys, under the laws, a greater share of the blessings of personal security, and personal liberty, than he can elsewhere hope for; * * *-if a banishment of this sort be not a punishment, and among the severest of punishments, it will be difficult to imagine a doom to which a name can be applied."

As a result, it seems clear that the defendant will be subject to more restrictive status of confinement, denied access to BOP's drug treatment, early release, community confinement programs that are otherwise available to general prison population, ineligible for minimum security confinement, unable to take advantage on minimum security designation of up to six months home confinement authorized by 18 U.S.C. § 3624(c) and is not eligible for one-year reduction of sentence awarded those who complete the BOP's 500-hour drug program. Additionally, will be subject to a life sentence of banishment in addition to the punishment that a citizen would suffer from the identical acts.

### B.    CRACK/POWDER RATIO CONTINUES TO CREATE DISPARITIES

One consideration to which the Court should give particular weight is a consideration expressly recognized by the Supreme Court in Kimbrough v. United States, supra as ground for not following the guidelines-the questionable provenance of the crack/powder ratio. As the Government itself acknowledged in Kimbrough, "the Guidelines'are now advisory' and . . ., as a general matter, 'courts may vary [from guideline ranges] based solely on policy considerations, including disagreement with the Guidellines,'" Kimbrough, 128 S.Ct at 570 (quoting brief for United States 16). While

10

the government then tried to distinguish policy disagreements, Supreme Court squarely rejected that argument. See <u>Kimbrough</u>, 128 S.Ct at 570-74.

Indeed, the Court suggested policy disagreement in this area was even more defensible that in other areas. It noted that "in the ordinary case, the Commission's recommendation of a sentence will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives,' id at 574 (quoting <u>Rita</u>, 127 S.Ct at 2465), and so "closer review may be in order when the sentencing judge varies from the Guidelines, based solely on the view that the Guidelines range 'fails properly to reflect § 3553(a) considerations' even in a mine-run case." <u>Kimbrough</u>, 128 S.Ct at 575. The Court then explained that this was not the case with the crack cocaine guidelines, however.

> The crack cocaine Guidelines, however, present no occasion for elaborative discussion of this matter because those Guidelines do not exemplify the Commission's exercise of its characteristic institutional role. In formulating Guidelines ranges for crack cocaine offenses, as we earlier noted, the commission looked to the mandatory minimum sentences set in the 1986 act, and did not take into account of "empirical data and national experience.' Indeed, the Commission itself has reported that the crack/powder disparity produces disproportionately hash sanctions, i.e., sentences for crack cocaine offenses "greater than necessary" in light of the purposes of sentencing set forth in § 3553(a). Given all this, it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence "greater than necessary" to achieve § 3553(a)'s purposes, *even in a mine-run case*.

<u>Kimbrough</u>, 128 S.Ct. at 574-75 (emphasis added)(citations omitted)

These concerns are only partially assuaged by the recent amendment reducing crack cocaine offense levels, moreover. This was recognized by the Supreme Court in <u>Kimbrough</u>:

> This modest amendment yields sentences for crack offenses between two and five times longer that sentences for equal amounts of powder.(citation and footnote omitted.) Describing the amendment as "only . . a partial remedy" for the

11

>problems generated by the crack/powder disparity, the Commission noted that "[\a]ny comprehensive solution requires appropriate legislative action by Congress."

Kimbrough, 128 S.Ct. at 569 (quoting 2007 Sentencing Commission Report, Supra pp 3-4 at 10). Kimbrough's rationale for varying from the crack guidelines therefore remains even after the new guideline is applied.

## C. THE COURT SHOULD NOT ASSIGN A RATION ANY HIGHER THAN THE LOWEST RATIO

At least three courts have identified the problems produced by the new table and declined to follow it. See United States v Watkins, 531 F.Supp 2d 943(E.D. Tenn. 2008); United States v. Horta, __F.Supp.2d__, 2008 WL 445893 (D. Me. Feb 19, 2008); United States v. Molina, slip op.,2008 WL 544703 (E.D.N.Y. Feb 28, 2008). The defendants in these cases were being sentenced for the first time after the amendment became effective. In Molina, however, Judge Gleeson commented on the effect on retroactive application: "Worse, a defendant's guideline range being reduced is an absolute condition on that defendant's receipt of a sentence modification under the proposed revised § 1B1.10." Id at *4 (emphasis in original). Note that Judge Gleeson does not say that a reduced guideline range is an absolute condition for receipt of a sentence reduction under 18 U.S.C. § 3582(c)(2), but instead that it is an absolute condition "under the proposed revised § 1B1.10. The difference is important. When a policy statement such as this, or commentary to a guideline such as set forth in 2D1.1, comment, is inconsistent with a statute, the statute triumphs. See United States v. LaBonte, 520 U.S. 751, 757-58(1997); Neal v. United States, 516 U.S. 284, 292-95 (1996); Stinson v. United States, 508 U.S. 36, 38, 44, 45 (1993).

The court can decide the question based on a statutory construction alone. However, since all of the guidelines and policy statements are now advisory, the court should find that the false equivalencies in the table in USSG §2D1.1, comment 10 and the limitation in USSG §1B1.10(a)(2)(B) "fail[] properly to reflect the §3553(a) considerations," and thus "reflect and unsound judgment." <u>Rita</u> supra at 2465,2468 (2007). Because the table is not the product of "empirical data and national experience," the court is free to reject the policy statement's advise to deny relief when false equivalencies raise the guideline range. <u>Kimbrough</u> supra at 575 (2007); Gall supra at 594 (2007).

By recalibrating the crack cocaine quantity thresholds, the Commission has created a system in which the ratio of crack to powder cocaine varies wildly from one offense level to the next. Even worse, the ratio often is more severe for low level players than it is for the bigger dealers. Below are the new ratios:

| Level | Ratio |
|---|---|
| 38 | 33:1 |
| 36 | 33:1 |
| 34 | 30:1 |
| 32 | 33:1 |
| 30 | 70:1 |
| 28 | 57:1 |
| 26 | 25:1 |
| 24 | 80:1 |
| 22 | 75:1 |
| 20 | 67:1 |
| Lower | 50:1 |

As the guidelines are only advisory, the Court should not assign a ratio any higher than the lowest ratio of 25 to 1. Mr. St Surin is asking the Court to make an independent assessment-under §3553(a) and pursuant to the district court's duty under <u>Booker</u> and

13

Rita-that an advisory guideline range based on a higher ration reflects "unsound judgment" on the part of the Commission and should not be followed. See <u>Rita v United States supra</u>, (district court may conclude that the guideline sentence fails to reflect §3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless.);id at 2463. The presumption is not binding, does not place any burden of persuasion or proof on either party, and does not reflect greater deference to the Commission's factfinding than to that of the district court, but merely "reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review. Both the sentencing judge and Sentencing Commission will have reached the same conclusion the proper sentence in the particular case," which is a "double determination". The Court should use this as a tool to prevent unjust applications of a conversion table that is "unsound" on its face.

The conversion itself of crack to marijuana raises the base offense level from 30 to 32 (124 grams of crack x 14 kilograms of marijuana equals 1,736 kilograms of marijuana, and this conversion alone converts the Base Offense Level from 30 (700-100 Kilograms of marijuana) to 32 (1000 to 3000 kilograms of marijuana). If you take the lowest ratio of 25 to1, 124 grams of crack cocaine x 5 kilograms of marijuana converts to 620 kilograms of marijuana and a Base Offense Level of 28. This conversion creates a disparity in sentencing because the ratio's vary so wildly from one level to the next. These ratio's create a disparity in sentences.

**D. THE COURT SHOULD FIND A BASE OFFENSE LEVEL OF 30 AND A GUIDELINE SENTENCING ANGE OF 97 TO 121 MONTHS.**

The base offense level assigned to at least 50 grams but less than 150 grams of crack has been adjusted downward to offense level 30, which corresponds to a minimum advisory guideline range of 97 to 121 months. The 10 kilograms of cocaine powder converts to 2000 kilograms of marijuana and that added to the 620 kilograms of marijuana for the cocaine base produces a total amount of 2,620 kilograms. Under the Drug Quantity Table, 2620 kilograms for all drug types corresponds to a base offense level of 32. A two level reduction is applied under § 2D1.1, comment.(n.10D) for a total base offense level of 30 or 97 to 121 months. The undersigned understands that the two level reduction does not apply in this scenario based upon the amount of powder, but believes that because of the disparity of the ratios for the different base offense levels, coupled with the defendant's age, and that he is unlikely to offend in the future, his deportation status and lack of a criminal history and incarceration, this case warrants a base offense level of 30, or in the alternative, the Court should sentence the defendant to the lowest part of the guideline range of 121 months. Those facts clearly falls outside the "heartland " of cases and a downward departure is appropriate.

### E.  THE LANDSCAPE OF THE GUIDELINES HAS CHANGED SINCE SENTENCING.

The Court had given two reasons for imposing a sentence at the top of the guideline range. At sentencing, the Court explained "First, I think that the quantities that have been found by the Court for purposes of guideline calculation are very conservative. . . . If I draw reasonable inferences from all the telephone conversations and the intensity of the numbers of conversations between yourself and Mr. Weldon, while the Court did not use those quantities in determining the guideline range, I think I could have and therefore, I think it's appropriate to consider that quantity is likely very conservative,

number one;" Sentencing Transcript 95-96("S.Tr._")  The Court went on to state "However, it doesn't mean that I'm blinded to the fact that you were well aware of what he was doing, that he was moving large quantities of crack cocaine, certainly beginning in 2000, onto the street of Norwalk through the burdens and that while I did not hold you responsible, in effect, for that, I think the government's word was culpable for that, I think it's fully appropriate, particularly given your knowledge of that being what was happening, that I use it as a reason to hold you responsible in terms of where I sentence you under the guideline range." (S. Tr. Page 97). As a result of the new amendments to the guidelines, the ratio for crack has changed dramatically. The Commission's power to promulgate a policy statement, without consulting experts, without notice and public comment, and without congressional review, must be exercised in accordance with the Commissions statutory duties, it's purpose, and the statutory purposes of sentencing. Section 1B1.1, however, does not assure that the purposes of sentencing set forth in §3553(a) are met, nor does it accord with the Commission's statutory duties and purpose. The Court may reject §1B1.10 for such reasons. A sentence of 121 months imprisonment is over 10 years, and when given the increased severity and length of the time Mr. St Surin will be facing in the Bureau of Prisons because of his alien status, the additional time for deportation, the lack of re-entry into the United States, his age now and it would appear that he would be unlikely to offend in the future. Taking into account any relevant disparities, such as the disparity that results from applying the arbitrary ratios in the new drug quantity table, this Court should exercise its discretion under §3582(c), Booker and § 3553(a) and reduce the defendant's sentence to 121 months, which would be sufficient but no greater that necessary to fulfill the purposes of sentencing. This Court has

discretion to choose an appropriate sentence for each defendant. The approach which includes mechanically applying a sentence based solely upon the Sentencing Commissions newly promulgated ratios, reduces the act of sentencing to one "that could [be] performed by a machine; it is not a judicial assessment of the individual before the court." United States v. Cherer, 513 F.3d 1150, 1163 (9th Cir. 2008)(Noonan, J., concurring in part and dissenting in part) Section 3582(c)(2) specifically requires this Court to impose a new sentence in accord with §3553(a). By doing so, the statute requires this Court to individualize the new sentence it imposes on the defendant. It does not accomplish this goal by simply mechanically applying the new crack ratio's, and then sentencing the defendant to the top of the new guideline range. Hypothetically, if the defendant remained silent throughout the judicial process, and Court were to only impose a sentence based solely on the amounts of cocaine and cocaine base found by the jury verdict. This new guideline range would be substantially lower than if the Court then went on to find 1.5 kilograms of cocaine base and 10 kilograms of powder. His hypothetical guideline range would still have guidance from the Sentencing Commission. Would it be sufficient but no greater that necessary to fulfill the purposes of sentencing? The Sentencing Commission has acknowledged a disparity in sentences regarding cocaine base, and the defendant is 49 years old, with no criminal history, never been imprisoned, and serving a more severe sentence than most based on his deportable status. He will then be deported and will have lifetime banishment from this country.

   Therefore, for all the reasons set forth above, the defendant is respectfully requesting this Court to reduce the defendant's sentence to 121 months imprisonment.

          Respectfully submitted,

          The Defendant
          By His Attorney


          _____**/s/**_____
          Jason P. Gladstone, Esq.
          46 Post Road East
          Suite 1
          Westport, CT 06880
          Juris #10402
          Phone:(203) 226-8055
          Fax:  (203) 226-5081
          E-mail: Jason@jgladstone.com


<u>CERTIFICATION OF SERVICE</u>

I HEREBY CERTIFY that on September 9, 2008, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


_____/s/_____
Jason P. Gladstone